## MILLIKEN *v.* BENEDICT.

8    169
e222   267

If a tract of land, which, in point of fact is unseated, be assessed as seated with the knowledge and assent of the owner, and the commissioners of the county, it must be taken as seated, so far as regards the assessment and collection of the taxes; and a sale of it for taxes as unseated would be void: and this, whether the taxes have or have not been paid.

Land which is in fact unseated, and which is assessed as seated with the knowledge and assent of the owner, and the commissioners of the county, may, whenever it suits the interests or convenience of the county, upon giving reasonable notice to the owner, be *retransferred* from the seated to the unseated list, and be assessed as unseated; but the assessor has no right to retransfer it to the unseated list without reasonable notice to the owner, and if he do, a sale of it for taxes as unseated, is void.

In error from the Common Pleas of Huntingdon county.

*May* 23. This was an action of ejectment brought by Aden W. Benedict against David Milliken, for a tract of land situated in Barree township, Huntingdon county, containing *four hundred acres.* At the trial, Samuel Milliken, the landlord, was admitted to defend. The case, as it appeared from the paper-book, and as stated by Judge WILSON, in his charge to the jury, was substantially as follows :—

The plaintiff below, Aden W. Benedict, who is the defendant in error, claimed title under a warrant to one George Hill, dated 21st of January, 1794, and a survey thereon, on the 21st of May, 1794, which was duly returned to the surveyor-general's office, for four hundred acres of land; a treasurer's sale for taxes assessed on it as *unseated* for the years 1839 and 1840, in the name of the said George Hill; a treasurer's deed, dated the 13th of July, 1842, together with the *surplus* bond required by the act of Assembly, which was executed and delivered within two years after the sale. But the defendant below, David Milliken, who is the plaintiff in error, contended that the title of the plaintiff was void, because the tract of land in controversy was *seated* at the time of the assessment of taxes on it, and the sale thereof by the treasurer.

On the trial, the plaintiff produced the books from the commissioners' office, by which he showed the following assessments on the *unseated list* of lands for Barree township : 1839, George Hill, four hundred acres, valuation $100, tax, *twenty-two cents ;* 1840, George Hill, four hundred acres, valuation $100, tax *twenty-five cents.* The treasurer's sale-book was then produced, which showed a sale of the said tract of four hundred acres for the taxes assessed

thereon for the years aforesaid, on the 13th of June, 1842, by Andrew H. Hirst, treasurer of Huntingdon county, to Aden W. Benedict, the plaintiff, for $20. The deed from Hirst, the treasurer, to Benedict, the plaintiff, for the said tract of four hundred acres, dated July 13th, 1842, and acknowledged 12th of August, 1842, was then given in evidence, under objection by the defendant. The plaintiff then gave in evidence his bond given for the surplus, under the act of Assembly, dated August 8th, 1842, and filed in the office of the prothonotary of the county, on the 2d of July, 1844. He then read in evidence the writ of ejectment, under objection by the defendant.

The defendant, to show *that the tract was seated*, proved that David Milliken, the defendant, went upon it in the fall of 1839, with workmen, commenced an improvement, put up a cabin, and built a saw-mill, which he started in the spring of 1840 ; that the millwright boarded himself; that the workmen slept in the cabin, which had a bed in it; that Milliken slept in the cabin sometimes; and that the workmen cooked in it such provisions as Milliken sent to them; that two loads of boards were hauled there, in the fall of 1839, for Milliken, at which time, as testified by the witness, who hauled the boards, they had tools and a shanty with beds, and a way to stay at night, with utensils to cook; that he went to help raise the saw-mill in 1840, when he found a man by the name of Ball, with his family, living in a building which had been erected after he hauled the boards; that Ball had gone there early in the spring of 1840, and moved his family there late in the spring or early in the summer of the said year. Another witness testified that the saw-mill was commenced shortly after harvest, in 1839.

It further appeared from the evidence given by the defendant, that the tract of land in controversy was sold for taxes in 1816, to one William Wilson; that the legal owner did not redeem, and that a certain Henry Steely became the owner thereof in 1835, under Wilson's title; that the assessment list of seated lands for the years 1839 and 1840, for the township in which the tract of land in dispute was situated, showed an assessment of two tracts of land in the name of Henry Steely: one thereof containing four hundred acres, and the other one hundred and fifty acres ; that the tax assessed on the four hundred acre tract for 1839, was *eighty-eight cents*, and for 1840, *one dollar*. On the one hundred and fifty acre tract, the tax assessed for 1839, was sixty-six cents, and for 1840, seventy-five cents. It also appeared from the assessment list of *seated* lands in Barree township, for 1838, that the same

tracts of lands were assessed in the name of Henry Steely; and that the tax assessed for the said year on the said tracts as *seated*, was paid before the sale to Milliken by the treasurer, in 1840, of the four hundred acre tract, which Milliken showed was assessed as *unseated*, in the name of George Hill, in 1838.

On the question, whether the land assessed in the name of Henry Steely, as a *seated* tract, was the same that was assessed in the name of George Hill, as an *unseated* tract, for the years 1839 and 1840, the following evidence was given. Deed from John Lewis, who had become the owner of the title acquired under the purchase of William Wilson, of the George Hill tract, to Henry Steely, in November, 1835; the assessment lists of seated lands in the township of Barree, for 1837, showing that two tracts, one containing four hundred acres, and the other one hundred and fifty acres, were assessed in the name of Henry Steely, and the same assessment continued in .1838, 1839, and 1840. William L. Black, a witness, said that he had been on the four hundred acre tract frequently; that he knew Steely's other tract; that he never knew of Steely having any other tracts of land in Barree township. James Gillam, another witness, said that he knew the tract of land in dispute; that Steely claimed this tract in the name of George Hill, and also a tract in the name of Steely, on the Broad Mountain, containing one hundred and fifty acres. One Green testified that he was assessor for Barree township for the year 1840; that he had been assessor four different years previously to 1840; and that at some assessment previously to 1840, Josiah Ball requested him to enter on the seated list a tract of four hundred acres of land, lying on Stone Creek, above the residence of the said Ball, in the township of Barree, in the name of Henry Steely, together with Steely's other tract of one hundred and fifty acres, which he accordingly did. William D. Black testified that he was collector of Barree township for 1840, and exhibited his duplicate for that year, in which were the following charges:—

| | |
|---|---|
| Steely, Henry's, heirs tax, - - - - | $1.00 |
| Same, - - - - - - - | 75 |

He also testified that the tax of $1.00 as above charged, was paid to him by David Milliken, in August, 1840, and that the tax of 75 cents was paid by Mr. Moran, who was the executor of Henry Steely, deceased. Several bills of exception to the admission and rejection of evidence were taken at the trial, but as they

have no relevancy to the points ruled in this court, it is not important that they should be noticed in this report.

The court (WILSON, P. J.), concluded his charge to the jury thus:—

"Then you determine in this case—was the land unseated at the time the taxes or either of them on which it was sold, was assessed. If it was, is it a different tract of land from the land assessed in the name of Henry Steely. If you find that it was unseated, and that the land in dispute is not the same that is taxed in the name of Henry Steely, the plaintiff would be entitled to recover. But if you find that it was seated at the time the taxes on which it was sold, were assessed—or if unseated, but assessed on the seated list in the name of Henry Steely, the owner, and the taxes so assessed on the seated tax-lists for the year 1839, and 1840, were both paid before the sale to Mr. Benedict, in 1842, then plaintiff cannot recover."

The plaintiff requested the court to charge the jury thus:—

1st. That if the jury are not satisfied from the evidence that the land shown in the seated list to be taxed in the name of Henry Steely is the same land as that taxed in the unseated list in the name of George Hill, that then plaintiff is entitled to recover.

2d. That even though the jury do believe from the evidence that the land taxed in the seated list in the name of Henry Steely for the year 1839 is the same land which in the same year is taxed in the unseated list in the name of George Hill, and that Henry Steely's heirs, or some person for them, paid the taxes so assessed in the seated list; that the defendants not having connected themselves with Henry Steely's title, cannot protect themselves by it; no one but the owner of the land having the right to take advantage of such payment to avoid the deed on a tax sale to plaintiff.

3d. That if the jury are not satisfied from the evidence that the taxes for the tract of land in the name of George Hill were paid previous to the tax-sale to the plaintiff, that then the plaintiff is entitled to recover.

4th. That if the jury are not satisfied that the marks in the duplicate of 1839, claimed as evidence of the payment for taxes, were made before June 13th, 1842—that then there is no evidence to effect the tax-sale to the plaintiff: and therefore plaintiff should recover.

5th. That even if the jury believe the land assessed in Barree township in the seated list in the name of Henry Steely is the same land as that assessed at the same time in the unseated list in

the name of George Hill, as there is no evidence of either the prior or subsequent assent or direction of Henry Steely to assess the same in the seated list, it was improperly assessed as seated land, and the payment of the tax on the seated list is no bar to the plaintiff to recover.

*Answers to the Plaintiff's Points.*—"1st. We answer as requested.

"2d. We refuse to answer this point as requested. David Milliken, who is in possession, may against the tax-title use or show the payment of taxes by Steely's heirs, to show that the taxes assessed on the land for the same years in the name of Steely were paid, and to show that no legal sale could be made for taxes assessed on it as unseated land for the same years.

"3d. We refuse also to answer this as requested. Although the taxes assessed on the land in the name of George Hill were not paid at the time of the sale to Mr. Benedict, yet, if the tax in the name of Steely is for the same land, and that tax was paid before Mr. Benedict purchased, the sale to him would convey no title.

"4th. We answer as requested. If the taxes assessed in the name of Henry Steely for the years 1839 and 1840 were not paid before the 13th June, 1842, when Mr. Benedict purchased, and you find that the land was unseated at the time the tax was assessed, the plaintiff will be entitled to recover.

"5th. We cannot instruct you that there is no evidence either subsequent or prior to the assessment in the name of Henry Steely that he assented to such taxation. If done without his assent or direction, and the land was unseated, it would be improperly assessed as unseated; still, a payment of such tax on the seated list would, before a sale for the tax on the unseated list, defeat such sale—we therefore refuse to answer as requested.

"6th. We refuse this instruction as matter of law. But the point here put is immaterial in this case, as the questions upon which the case must be determined do not depend on whether the defendant is in possession as an intruder. The plaintiff's right to recover in this case must depend on whether he has any title upon which he can recover even against an intruder—which must depend on how you find the facts on the questions presented for your decision in our general charge."

The defendants requested the court to charge the jury thus:—

1st. That if the jury believe, from the evidence, that the tract of land containing four hundred acres, assessed in the *seated* list to Henry Steely, in the years 1837, 1838, 1839, and 1840, is the George Hill tract, sold in 1842 to the plaintiff, and that the taxes

charged to the said Henry Steely in the duplicates of 1839 and 1840, were paid to the collectors previous to the sale made by the treasurer to the plaintiff, the sale is void, and gave the plaintiff neither title nor colour of title, and he cannot recover in this suit.

2d. That no acquisition of any interest in the title of Henry Steely, by the plaintiff, from the widow of Henry Steely, *since* the institution of this suit, which was not vested in him at the time of the institution of this ejectment, can avail him to enable him to support this suit.

3d. That if there were any taxes due on the land in controversy in this suit, at the time of the treasurer's sale, in June, 1840, to David Milliken, his tax-title is a sufficient defence against the claim of the plaintiff in this action.

*Answers to Defendants' Points.*—"1st. We do not answer this point to the extent here requested, that the sale would be absolutely void and without colour of title; but these facts, if you so find them, present a case upon which the plaintiff cannot recover.

"2d. We answer this point as requested.

"3d. If there were any taxes due on the land in controversy, at the time of the treasurer's sale to Milliken, in 1840, on the unseated list, and no tax for the same land for the same time was paid where it was assessed as seated, Milliken would acquire a title under his sale. But it does not therefore follow that his title is a sufficient defence against the claim of the plaintiff in this action. His right to recover must depend on how you find the facts which have been submitted to you in our general charge.",

To the charge of the court, and answers to the points propounded, each party excepted. The jury found for the plaintiff. The defendants then sued out this writ of error, and assigned the following errors here :—

1. The court erred in saying to the jury, "It was perfectly competent to tax the land in the name of Henry Steely or his heirs, who had become the owner of the Wilson title—and if so charged and the tax paid, after such payment it could not be legally sold for the tax charged upon it as an unseated tract—the title would remain in the heirs or devisees of Henry Steely; still a purchaser at such sale might recover the land against an intruder—that is, against one who enters without title or colour of title, and who has nothing but his naked possession," &c.

2. The court erred in their instruction to the jury in relation to the effect of the outstanding title of Henry Steely.

3. The court erred in saying to the jury, in relation to the

identity of the George Hill tract, and the tract assessed in the name of Henry Steely, "if they are not the same the plaintiff will be entitled to recover, and in the second place, if you find that the assessments are for the same land, then did any of the taxes assessed upon it as a seated tract for 1839 or 1840 remain unpaid at the time of the purchase by Mr. Benedict."

4. The court erred in their instruction to the jury, by putting the case upon the question, whether the tax of 1839 in the seated list in the name of Henry Steely was paid before the sale to Mr. Benedict.

1st. The court erred in their answer to the first and fourth points put by plaintiff's counsel.

2d. The court erred in their answer to the first point put by defendants' counsel.

3d. The court erred in their answer to the third point put by defendants' counsel.

4th. The court erred throughout their charge to the jury in their answers to the several points put by defendants' counsel.

*Miles* and *Wilson*, for plaintiff in error.

*Benedict* and *Orbison*, contrà.

*May* 29. ROGERS, J.—This is an action of ejectment, in which the plaintiff claims title under a warrant to George Hill—a sale for taxes assessed in his name, in the years 1839 and 1840, and a treasurer's deed, dated the 23d July, 1841; together with a surplus bond, executed and delivered within two years after the sale. This vests in the plaintiff a *primâ facie* title; but the defendant contends the plaintiff's title is void, because, at the time of the assessment of the taxes on which the land was sold, and the treasurer's sale, the property in controversy was a seated tract. That a sale of land by a treasurer as unseated, which nevertheless was seated at the time of the assessment and sale, is void, is ruled in several cases: 4 W. & S. 36; 2 W. & S. 107; and must now be considered as the settled law of this state. And what constituted a seated tract, as far as the court go, has been well explained; and no exception can be taken to that part of the charge. A tract ceases to be unseated as soon as it is actually occupied with a view to permanent residence; of which an entry for the purpose of clearing the land, would be good evidence: 5 W. 441. We agree also, that as soon as a person enters upon an unseated tract,

whether as an intruder or under a lease from the owner, becomes a resident upon it, improves it, and occupies it in such a way as to furnish upon the land itself the means of levying the taxes by distress, it is a seated tract, and is no longer the subject of sale for taxes. And if residence by any person has once commenced, it is sufficient; and an occasional or temporary suspension of actual occupancy will not render it unseated. So it has been ruled, that land ceases to be unseated as soon as it is actually occupied with a view to present use; and an occupation may be said to commence the moment a person enters with a view to clearing it: 7 W. & S. 248.

The same principles also apply, as the court instructs the jury, where a house is put up and occupied for the purpose of carrying on a saw-mill, erected or in progress of construction, with a view to present use. But in addition to the principle thus correctly laid down, there is another class of cases pertinent to the points of the case, to which the attention of the court would seem not to have been drawn. I allude to those cases where it is ruled that land may lose its character as unseated, by the joint act of the owner and the officers of the county. Thus, if the jury should believe that the property assessed in the names of George Hill and Henry Steely is one and the same tract; that it was assessed as a seated tract consecutively from 1837 until the year 1840, with the assent and knowledge of the owner and the county, of which evidence was given: it must be taken as a seated tract, and consequently will avoid the sale for taxes as an unseated tract for the years 1839 and 1840, and this without regard to the fact, whether the taxes have or have not been paid. This consequence necessarily results from the principle ruled in Larimer v. McCall, 4 W. & S. 133; Harper v. The Mechanics' Bank, 7 W. & S. 214. There is no law, as is said in Harper v. Bank, which forbids the owner of the land from consenting when it has been so assessed that it shall be treated as a seated tract, even when it is notoriously otherwise. And the reason given for it is for the advantage of the county. In Larimer v. McCall, it is decided that when it has been changed from the unseated to the seated list, with the assent of the proper parties to it, it does not lose its character of unseated unless notice is given to the owner of the intention to retransfer it from the seated to the unseated list. And this is held to be necessary, because otherwise the owner who relies upon the fact that his land is exempted from sale, may lose it without any default on his part. But if the land must be viewed as seated, it must have all the qualities

and essentials of that character, and cannot be subject to sales for non-payment of taxes. The difference between seated and unseated land is, that the one can be, and the other cannot be sold for taxes. The remedy in the one case is against the land; in the other, the owner is personally liable. Nor has the county any right to complain, as the change can only be made by their consent, and moreover they may, whenever it suits their interest or convenience, upon giving reasonable notice to the owner, retransfer it, and assess the land as unseated. But the Court of Common Pleas, as we understand the charge, instruct the jury that the principles ruled in Larimer *v.* McCall and Harper *v.* Bank, only apply where the owner has continued to pay the taxes, a distinction not warranted by the cases. It becomes, as is there ruled, to all intents and purposes, a seated tract, as respects its liability to taxation, and the assessor has no right to transfer it to the unseated list without reasonable notice to the owner.

Many exceptions have been taken here to the admission and rejection of evidence, and to the charge, which it is useless to notice further than to remark that they have not been sustained. But as there is error in that part of the charge of which notice has been taken, we are of opinion the cause must be reversed, and a *venire de novo* awarded.

Judgment reversed, and a *venire de novo* awarded.