## Floyd *v.* Kulp Lumber Company, Appellant.

*Ejectment—Tax title—Seated and unseated lands—Admission by predecessor in title—Prior ejectment—Evidence.*

In an action of ejectment where the defendant exhibits a title derived from the treasurer's sale for taxes assessed in a particular year on the land as unseated, entirely regular in form and long subsequent to the acquisition of the title exhibited by plaintiffs, derived from a

like sale, the prima facie is with the defendant, and the burden is on the plaintiffs to prove an allegation made by them that the land was assessed in the same year as seated land as well, and therefore exempt from sale.

In such a case assessment lists for the year immediately preceding the year in question and for the two following years are not evidence of the issue raised, but if no prejudice results from their admission, the error is harmless, and a judgment will not be reversed for that reason alone.

In an action of ejectment where the defendant relies on a tax sale of the lands as unseated lands in a particular year, and the plaintiffs allege that the lands were assessed on the seated list as well, and therefore exempt from sale as unseated lands, and it is claimed by the defendant that the lands on the seated list, although of the same acreage, and in the name of the same owner were different lands, the plaintiffs may be permitted to offer in evidence the record of a prior ejectment in which defendant's predecessors in title were parties, and to show from the pleadings, the request for instructions and the assignments of error in such record, admissions by the defendant's predecessors inconsistent with the claims set up by defendant. If, however, judgment in such prior ejectment was reversed, and the plaintiff subsequently suffered a nonsuit, the verdict and the judgment are not evidence as to anything, although the pleadings, points and assignments of error are extra judicial admissions of the parties, and as such are evidence.

In such a case the admissions of defendant's predecessors in title, whether made in the pleadings or in the concession of the attorneys of record, are binding upon the defendant because of the privity of title between him and his predecessors. Such admissions, however, are not conclusive so that the court may base binding instructions upon them, but they are evidence for the jury to determine whether the land in question was on the seated list as well as on the unseated list in the same year.

Where a writing is not a dispositive instrument, but is put in evidence merely to show an extrinsic fact, it will be for the jury to say what inference is to be drawn therefrom. When documents are offered in evidence as the foundation of an inference of fact, whether such inference can be drawn from them is a question for the jury.

Argued April 21, 1908. Appeal, No. 32, Jan. T., 1908, by defendant, from judgment of C. P. Huntingdon Co., May T., 1907, No. 11, on verdict for plaintiffs in case of J. B. Floyd, Samuel M. Floyd, Mary E. Floyd, Jane A. Floyd and Emma A. Floyd, daughter of Henry Floyd, deceased, v. Kulp Lumber

Company.　Before MITCHELL, C. J., FELL, BROWN, POTTER and STEWART, JJ.　Reversed.

Ejectment for land in Jackson township.　Before SHULL, P. J., specially presiding.

At the trial the defendant claimed title under a tax sale of the land as unseated land.　The plaintiffs claimed title under an earlier tax sale, and asserted that in the year in which the defendant claimed that the lands were assessed as unseated lands, they were also on the seated list, and therefore exempt from sale as unseated lands.　The year in question was the year 1838.　Plaintiffs offered in testimony the assessmnts for the years 1837, 1838, 1839 and 1840.　These assessments were admitted under objection and exception. [1]

Plaintiffs made the following offer:

Mr. J. S. Woods: I now offer continuance docket "T" No. 1, page 62, at the record of No. 38, January Term, 1845, being an action of ejectment between Adin W. Benedict and David Milliken, and Samuel Milliken was afterwards admitted to defend as landlord, with the writ of ejectment and other papers in the case, together with the pleadings and all the papers filed in that suit; for the purpose of showing that the land in controversy in No. 38, January Term, 1845, is the identical land of which the land in the present suit is an undivided one-half part, and for the further purpose of showing that on the trial of that case David and Samuel Milliken, under whom the defendant claims title, proved that the land in controversy in this suit, which was assessed on the unseated list in Barree township for the year 1838, is the identical land assessed in Barree township on the seated list to Henry Steely for the year 1838, and that the taxes on the list for 1838 were paid before the sale to David Milliken in 1840.

Mr. Henderson: The offer is objected to.

1. For the reason that it is wholly incompetent and inadmissible.

2. For the reason that the record of this case, open to the inspection of the court, does not contain any evidence by David or Samuel Milliken that the tract of land involved in the present

suit is the same tract as is alleged to have been assessed as the seated list in 1838.

3. For the reason that the action brought to No. 38, January Term, 1845, was brought by A. W. Benedict against David Milliken and Samuel Milliken for the recovery of the land therein mentioned upon the basis of an alleged tax sale to A. W. Benedict for taxes for the years 1839 and 1840, and not for taxes of 1838.

4. That under the issue in No. 38, January Term, 1845, the question of the taxation of the land involved in that suit for the year 1838 was not in issue and not a matter material to the determination of the case, the sale having been made to Benedict as alleged by the plaintiffs in that case for the tax of 1839 and 1840.

5. For the reason that the notes of testimony in the action to No. 38, January Term, 1845, are not admissible in evidence.

6. For the reason that the bill of exceptions referred to in the plaintiffs' offer in this case as being filed to No. 38, January Term, 1845, are not admissible or competent as evidence in this action.

7. For the reason that the action now being tried is not between the same parties, nor the successors in title to the same parties, who were plaintiffs and defendant in the action to No. 38, January Term, 1845.

8. For the reason that the record in No. 38, January Term, 1845, and the papers filed to the said action, do not show that there was proof that Henry Steely had paid the taxes on the land involved in that action assessed upon the seated list for 1838 before the sale to A. W. Benedict, or at any time.

The Court: Objection overruled. Evidence admitted. Bill of exceptions sealed for defendant. [2]

Mr. J. S. Woods: I will read this record:

"Adin W. Benedict v. David Milliken, and Samuel Milliken, Landlord. No. 38, January Term, 1854. Alias Ejectment. See No. 98, November Term, 1844."

Sheriff returns: "Served by leaving a copy of writ with the defendant on the premises." January 11, 1845, plaintiffs' declaration and description filed. Mr. Gwin appears for defendant,

etc.; continued; April continued; August continued; November continued; January, 1846, continued; April continued.

And now, June 18, 1846, plaintiffs enter a rule on defendant to plead in six weeks or judgment. July 25, 1846, defendant pleads "not guilty." Issue and rule for trial. August continued. November Term, 1846 (fourteenth day), by leave of the court, A. Gwin, Esq., withdraws his appearance for defendant, and by the consent A. P. Wilson, Esq., is substituted as attorney for defendant. Continued.

And now, April Term, 1847, do say that they find for the plaintiff, with six cents damages and six cents costs.

And now, April 20, 1847, Mr. Miles, on behalf of defendant, moves the court for a new trial for reasons filed. Now, July 27, 1847, rule at instance of defendant to take depositions on five days' notice. And now, to wit: February 16, 1848 (by order of Judge WILSON filed), motion for a new trial overruled and new trial refused. And now, March 1, 1848, at instance of plaintiffs, they having first paid jury fee, judgment on the verdict. Judgment.

Recognizance of bail for writ of error filed March 14, 1848; March 17, 1848, writ of error filed; April 18, 1848, charge of the court filed; August Term, 1851, continued; November 10, 1851, rule on part of defendant to take depositions of William D. Black on twenty hours' notice. And now, to wit: November 12, 1851, record returned and filed with a service thereon that at a Supreme Court held at Harrisburg in and for the middle district of the commonwealth of Pennsylvania, the judgment of the court of common pleas was reversed on May 29, 1848, and a venire facias de novo awarded.

And now, to wit: November 15, 1851, plaintiffs become nonsuit. Judgment.

Mr. J. S. Woods: I will now read the plaintiffs' exhibit 16:

"A. W. Benedict v. David Milliken and Samuel Milliken. The court are requested to charge the jury as follows:"

1. That if the jury believe from the evidence that the tract of land containing 400 acres assessed in the seated list to Henry Steely in the years 1837, 1838, 1839 and 1840 is the George Hill tract sold in 1842 to the plaintiffs, and that the taxes charged to

the said Henry Steely in the duplicates of 1839 and 1840 were paid to the collector previous to the sale made by the treasurer to the plaintiffs, the sale is void and gave the plaintiffs neither title nor color of title, and they cannot recover in this suit.

2. That no acquisition of any interest in the title of Henry Steely by the plaintiffs from the widow of Henry Steely since the institution of this suit, which has not vested in them at the time of the institution of this ejectment, can avail them to enable them to support this suit.

3. That if there were any taxes due on the lands in controversy in this suit at the time of the treasurer's sale in June, 1840, to David Milliken, his tax title is a sufficient defense against the claim of the plaintiffs in this action.

Mr. Henderson: I especially object to the exhibit just offered and read for the reason that it is wholly incompetent and inadmissible.

The Court: Objection overruled. Evidence admitted. Bill of exceptions sealed for defendant. [3]

Mr. J. S. Woods: I offer now, still under the former offer, plaintiffs' exhibit 17, G. E. S., being the assignments of error signed by A. P. Wilson for the plaintiffs in error.

Mr. Henderson: This exhibit is specially objected to for the reason that it is incompetent, inadmissible and immaterial for the purpose offered.

The Court: Objection overruled. Evidence admitted. Bill of exceptions sealed for defendant. [4]

Read as follows: Plaintiffs' exhibit 17, G. E. S.

"Adin W. Benedict, plaintiff below, v. David Milliken and Samuel Milliken. Assignment of errors."

The plaintiffs in error assign as error:

1. The court erred in admitting in evidence the treasurer's deed to A. W. Benedict as stated in the first bill of exceptions.

2. The court erred by admitting in evidence the plaintiffs' writ of ejectment.

3. The court erred by refusing to allow defendant below to ask George Wilson whether he did not know of David Milliken cutting shingles, the question proposed in the third bill of exceptions.

4. The court erred in rejecting the evidence offered to be proved by W. S. Africa contained in the fourth bill of exceptions taken on part of the defendant.

5. The court erred in rejecting the evidence offered to be proven by Jacob Cresswell as embraced in the fifth bill of exceptions taken on part of defendant.

6. The court erred by admitting in evidence the will of Henry Steely as embraced in the sixth and seventh bills of exceptions.

7. The court erred by admitting in evidence the release of Mary Steely to the plaintiffs below as embraced in the third bill of exceptions on part of the defendant.

In the charge:

1. The court erred ·in that part of their instruction to the jury in relation to the filing of the plaintiffs' bond given to the treasurer.

2. The court erred in saying to the jury: "It was perfectly competent to tax the land in the name of Henry Steely or his heirs who had become the owners of the Wilson title, and if so charged and the tax paid, after such payment it could not be legally sold for the tax charged upon it as an unseated tract, the title would remain in the heirs or devises of Henry Steely; still a purchaser at such sale might recover the land against an intruder, that is, against one who enters without title or color of title, and who has nothing but his naked possession."

3. The court erred in their instruction to the jury in relation to the effect of the outstanding title of Henry Steely.

4. The court erred in saying to the jury in relation to the identity of the George Hill tract and the tract assessed in the name of Henry Steely, "If they are not the same, the plaintiff will be entitled to recover, and in the second place if you find that the assessments are for the same land, then, did not all the. taxes assessed upon it as a seated tract for 1839 or 1840 remain unpaid at the time of the purchase by Mr. Benedict?"

5. The court erred in their instruction to the jury by putting the case upon the question whether the tax of 1839 in the seated list in the name of Henry Steely was paid before the sale to Mr. Benedict.

6. The court erred in their instruction to the jury in relation to the collector's duplicates in submitting the question to the jury to determine whether the tax had been paid, and as to the effect of the marks (+) in the duplicates, and in not instructing that as the collector was a public officer, and was dead, that the legal presumption was that he did his duty and collected the tax.

The court gave binding instructions for plaintiffs.

Verdict and judgment for plaintiffs. Defendant appealed.

*Errors assigned* among others were (1–4) ruling on evidence, quoting the bill of exceptions; and (9) in directing a verdict for the plaintiffs.

*W. M. Henderson*, with him *A. Reed Hayes*, for appellant.— If a prior action is between other parties than those in the present suit, and there is no privity between them, the verdict and judgment in the prior suit is inadmissible to prove any essential allegation or fact established thereby, or which was necessary to the rendition thereof: Stinchcomb v. Marsh, 15 Gratt. (Va.) 202; In re Walters, 61 L. T. 872; Morgan v. Nicholl, L. R. 2 C. P. 117; Livingston v. Cox, 8 W. & S. 61; Foster v. Shaw, 7 S. & R. 156.

Conditions which warrant the application of an estoppel must be clearly proved: Giddings v. Emerson, 24 Conn. 538; Andrews v. Lyons, 93 Mass. 349.

Whatever was the testimony offered on the part of Milliken, or whatever were their averments in the trial of that case, the verdict and judgment were adverse to them. They failed in their contention: McQueen's App., 104 Pa. 595; Baily v. Baily, 44 Pa. 274.

An averment in a former suit is admissible as evidence in the subsequent proceedings, but it is not conclusive unless the decision in the former suit was favorable to the averment: Assignment of John Treffeison, 3 Kulp, 308; Gillespie v. Mather, 10 Pa. 28; Zeigler v. Hautz, 8 Watts, 380; Lorain v. Hall, 33 Pa. 270; Lentz v. Wallace, 17 Pa. 412; Hibshman v. Dulleban, 4 Watts, 183.

*James S. Woods,* with him *W. H. Woods,* for appellees.—
A party who seeks and obtains a particular judgment cannot
afterwards repudiate or impeach it, or avoid its conclusive
effect, by setting up a claim, or alleging facts inconsistent with
his former contention: Goodman v. Losey, 3 W. & S. 526;
Baily v. Baily, 44 Pa. 274; Murray's Est., 2 Pa. Dist. Rep. 681.

Judgment determining title to land, claimed by two persons,
runs with it, and binds all persons claiming through either
party, by a title acquired after the rendition of the judgment:
Baily v. Baily, 44 Pa. 274.

Only as extrajudicial admission can the statements of a
party in his pleadings, be used against him in another. These
statements may be used in that quality by a stranger in the
former litigation: Truby v. Seybert, 12 Pa. 101; Knupp v.
Brooks, 200 Pa. 494; Baldwin v. Taylor, 166 Pa. 507; Hollard
v. Kindregan, 155 Pa. 156; Lonzer v. R. R. Co., 196 Pa. 610.

*S. P. Wolverton,* with him *A. Reed Hayes* and *W. M. Hender-
son,* for appellant, in reply, cited: Sample v. Coulson, 9 W. & S.
62; Blackmore v. Gregg, 10 Watts, 222; Cluggage v. Duncan,
1 S. & R. 111; Chase v. Irvin, 87 Pa. 286; Lineberger v. New-
kirk, 179 Pa. 117; Velott v. Lewis, 102 Pa. 326; Miller v. Mc-
Cullough, 104 Pa. 624; McClements's App., 2 Pa. Superior Ct.
443.

OPINION BY MR. JUSTICE STEWART, October 5, 1908:

To defeat plaintiffs in their action, defendant relied upon a
title which had its origin in a treasurer's sale of the land in dis-
pute for unpaid taxes, assessed for the year 1838 on the land as
unseated. No question was raised as to compliance with legal
requirements in connection with this sale, or that the defendant
had legally succeeded to the title acquired thereby. The one
question in the case was, whether this particular tract was as-
sessed for the year 1838 as seated land as well. It was conceded
that if assessed as seated land for that year, it was not liable
to sale for taxes assessed as unseated land, and that a pur-
chaser under such a sale could acquire no title. The defendant
having exhibited a title derived from a treasurer's sale for

taxes assessed on the land as unseated, entirely regular in form, and long subsequent to the acquisition of the title exhibited by plaintiffs, derived from a like sale, the prima facies was with the defendant, and the burden was on the plaintiffs to prove the alleged defect in the later title; that is, that the land was assessed in the year 1838 as seated land, and therefore exempt from sale. To this end they offered the assessment lists for the years 1837, 1838, 1839, 1840. All were embraced in one offer. The relevancy of the list for 1838 is obvious; but how the other lists could reflect any light upon the question at issue is not apparent. If they had any relevancy, it certainly was not disclosed in the offer, and we see nothing in the case that made them pertinent, at least in the connection in which they were offered. Had prejudice resulted from their admission, it would have been sufficient ground for reversal under the first assignment of error; but so far as we can see the error was harmless. The lists show that in each of these years this particular tract, distinguished as the land included in the George Hill warrant, containing 400 acres in Barree township, was assessed as unseated land. The title to the tract was admittedly in Henry Steely, who died in 1838. The lists of seated land during these same years showed several tracts assessed in the name of Henry Steely, one of them being for 400 acres in Barree township, but without any other description whatever. The mere fact that the assessments are upon tracts of land of equal acreage, would not of itself warrant an inference that the tracts were one and the same. To establish their identity, plaintiffs were allowed, under objections to be considered later on, to introduce in evidence the record as it appears in the continuance docket of a former action of ejectment brought to No. 38, January Term, 1845, for the same tract of land, between Adam W. Benedict plaintiff, and David Milliken and Samuel Milliken defendants, with the writ and other papers filed in that case; "for the purpose"—so runs the offer—"of showing that the land in controversy in No. 38, January Term, 1845, is the identical land of which the land in the present suit is an undivided one-half part; and for the further purpose of showing that on the trial of that case David and Samuel Milliken, under whom

the defendant claims title, proved that the land in controversy in this suit,. which was assessed on the unseated list in Barree township in 1838, is the identical land assessed in Barree township on the seated list to Henry Steely for the year 1838, and that the taxes on the seated list for 1838 were paid before the sale to David Milliken in 1840." That the evidence included in this offer had tendency to prove the fact contended for, is quite apparent; and the only question was as to the weight and force to be allowed it. The effort on the part of the defendant in that action was to defeat the plaintiff's claim of title under the treasurer's sale to Benedict, by showing that in the years 1839 and 1840 the tract now in dispute was assessed as seated land. This was one of the questions submitted to the jury and the verdict was for the plaintiff. On appeal to this court— Milliken v. Benedict, 8 Pa. 169—the judgment was reversed with a venire, upon considerations which do not here concern us, and which therefore need no further reference. The last entry in the continuance docket under this particular number is, "Now, 15 Nov., 1851, plaintiff becomes nonsuit. Judgment." It thus appears that there was no judicial determination of any matter in that case which could in any wise prejudice the defendant in this. The effect of the reversal of the judgment was to place the parties to the action in the same condition as they were before the judgment was rendered; their respective rights after reversal were just what they would have been had the case never been tried. How or why the plaintiff "became nonsuit," does not appear, nor is it of any consequence to inquire. It is enough to know that it could not have been because of anything the defendants had done. That judgment followed nonsuit is immaterial; for neither judgment nor verdict helps in any way to identify the land in controversy as the land that was assessed as seated. No facts were established by either side through any judicial inquiry touching the merits of this controversy. It follows that the verdict and judgment being wholly irrelevant, were improperly admitted. Not so, however, with respect to the papers in the case—the pleadings, the requests for instructions, and the assignments of error. These were offered as extrajudicial admissions on the part of the

Millikens that the land they were claiming was in fact seated land in 1838. It may be that the requests for instructions and assignments of error show more or less of an inconsistency between the positions taken by the defendants in that case and those taken by the defendant in this. If there is anything in them which can properly be construed as an admission by the Millikens, either express or implied, of the fact here asserted by the plaintiffs—that the land was seated in 1838—they were certainly admissible in evidence. Touching this matter, it is quite enough for us to say that in our opinion this test was met. True, it may be, and doubtless is, that these requests and assignments were drawn by counsel; but in such case the law makes no distinction. "The concessions of attorneys of record bind their clients in all matters relating to the trial and progress of the cause:" Truby v. Seybert, 12 Pa. 101. "That the pleadings in prior causes must be treated as the parties' admissions, usable as evidence in later cases, must be conceded:" Wigmore on Evidence, sec. 1066. Nor does the fact that the action in which these papers were used was brought by other parties than the plaintiffs here, without privity between them, make them inadmissible. Between the defendants in that suit and the defendant in this, there is unquestionable privity of title, and this is quite sufficient. "In the case before us," says KENNEDY, J., in Gibblehouse v. Stong, 3 Rawle, 437, "the testimony offered and rejected was not of that character, which, in a technical sense, comes under the denomination of hearsay. It comes under what is considered the declarations or admissions of the party to the suit or his privies, that is, those under whom he claims; in respect to which the general rule of law is just as well settled that they shall be received in evidence as that hearsay shall not. All a man's own declarations, acts and also the declarations and acts of others to which he is a privy, are evidence so far as they offer any presumption against him, whether such declarations amount to an admission of any fact, or such acts and declarations of others to which he is privy afford any presumption or inference against him. . . . And this rule admitting the confessions and declarations of the party, extends not only to the admission of them against him-

self, but against all who claim or derive their title from him; in other words, between whom and himself there is a privity. . . . Privities in estate, such as vendor and vendee, assignor and assignee, stand upon the same footing in this respect to each other that privities in blood do. I know of no distinction." Cowan & Hill, in Notes to Phillips on Evidence, No. 481, p.,644, state the rule as follows: "The owner's estate or interest in the same property afterward coming to another by descent, devise or right of representation, sale or assignment, in a word, by any kind of transfer, whether it be by act of the law or an act of the parties, whether the subject of the transfer be real or personal estate, corporeal or incorporeal, choses in possession, choses in action, the successor is considered a claimant under the former owner; but whatever he may have said affecting his own rights, before parting with his interest, is evidence equally admissible against his successor claiming from him, either immediate or remotely.' And in this instance it makes no difference whether the declarant be alive or dead; for though he be a competent witness, and present in court, his admissions are receivable. This doctrine proceeds upon the idea that the present claimant stands in the place of the person from whom his title is derived; has taken it cum onere; and as the predecessor may have taken a qualified right, or sold, charged, restricted, or modified an absolute right, and as he might furnish all the necessary evidence to show its state in his own hands, the law will not allow third persons to be deprived of that evidence by any act of transferring the right to another."

This, then, was the state of the evidence—there was nothing outside the requests for instructions and assignments of error in the case of Benedict v. Milliken, which in the remotest way tended to identify the land in dispute with the land that was carried on the assessment list of 1838 as seated. We have not overlooked the charge of the court in that case, or what was offered as the judge's notes of the evidence. The former was not admissible to prove what had been testified to on the trial; and the latter were not proven. The objection to each should have been sustained. The plaintiff's case in rebuttal rested wholly upon the alleged admissions in the requests for in-

structions and the assignments of error. Whatever these admissions were; however definite and unqualified they may seem, they were open to explanation or correction; in other words, they were controvertible. It was not a question of construction of the legal effect of the writings; but a question of probative effect of the alleged admissions contained in them. Did these admissions identify the land then in dispute with the land on the seated list in 1838? This was a question which the jury alone could determine; and it was equally for the jury to say what weight the admissions were entitled to in this action. "Where a writing is not a dispositive instrument, but is put in evidence merely to show an extrinsic fact, it will be for the jury to say what inference is to be drawn therefrom. When documents are offered in evidence as the foundation of an inference of fact, whether such inference can be drawn from them is a question for the jury:" 11 Ency. of Plead. and Prac., p. 80. In giving binding instructions in favor of the plaintiff, the learned trial judge used this language, to indicate the ground upon which he based his conclusions: "The record of the case of A. W. Benedict v. David and Samuel Milliken, brought to No. 38, January Term, 1845, for the George Hill tract, showing that in that case David and Samuel Milliken, the then owners of the alleged tax title, proved that the taxes for 1838 on the George Hill tract, assessed to Henry Steely on the seated land of Barree township for that year, were paid before the sale to David Milliken in 1840; David Milliken and Samuel Milliken and their successors in title are therefore estopped from alleging the contrary. This we say to you is the law and controls this case, and it was thoroughly established by the testimony that has been adduced."

As we have already said, the record in the case referred to shows nothing as proved; the verdict having fallen with the reversal of the case, it was inconclusive with respect to everything on which it rested. If in the course of the trial the Millikens asserted, either in requests for instructions, or in their assignments of error, that the land was seated in 1838, or any fact which would warrant such inference, it was entirely competent to prove the fact as an admission binding on the present

defendant.  If they introduced the evidence of witnesses to the same end, it was entirely competent to show this fact also, for like reason.  But whether they did one or the other, or both, were questions of fact for the jury in the present case to pass upon.  The court could assume nothing with respect to them.  And even though the admissions were established, still their effect would be for the jury.  There being here no estoppel by record, to say that the alleged admissions might have such effect, would be to misapprehend entirely the nature and purpose of estoppel.  Admissions work estoppel when they have been made to influence the action of others and have been acted upon.  But how does it appear that Benedict in purchasing the tax title to the land in 1842 was influenced in any way by admissions made by the Millikens?  Even if such fact were shown, there is no privity between the present plaintiffs and Benedict that would enable them to have any advantage from what Benedict himself might assert in this regard.  Any fuller discussion of the several assignments of error is unnecessary.  In what we have said, we have indicated certain specific errors to which the assignments have directed our attention; and these assignments are sustained.  With the evidence confined within proper limits the case was for the jury.

The judgment is reversed and venire facias de novo awarded.