## Commonwealth *v.* Mickens, Appellant.

50

Argued March 18, 1963. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Robert H. Arronson,* for appellant.

*Burton Satzberg* and *Arlen Specter,* Assistant District Attorneys, *F. Emmett Fitzpatrick, Jr.,* First Assistant District Attorney, and *James C. Crumlish, Jr.,* District Attorney, for appellee.

OPINION BY MONTGOMERY, J., June 12, 1963:

Appellant was indicted for aggravated robbery and assault and battery, aggravated assault and battery, and aggravated assault and battery by cutting allegedly committed with unknown persons on Christopher Milner, age 18, on June 21, 1962.

At the subsequent jury trial the victim testified that on that date at approximately 9:45 P.M. he was proceeding to visit a girl friend, whose address he had forgotten, when he noticed a group of young men sitting on the street corner drinking wine; that appellant emerged from the group, approached him and engaged him in a conversation; that appellant offered him some beer, demanding a quarter for it, and directed him to drink it in a nearby vacant lot; that immediately after entering the lot he was attacked by the group, punched, knocked to the ground, stamped upon and kicked; that a transitor radio which he was carrying on his shoulder was taken from him by one of his attackers; that appellant removed $19.80 from his pocket; that he began to black out as the group ran away; that he attempted to follow them until he was stopped by the appellant, who called a police officer and told him that the victim had accidentally fallen and needed a doctor; that he

told the police that he had been beaten and robbed, and identified the appellant as one of his assailants and as the one who had taken his money.

A Philadelphia police officer testified that Milner told him he had been beaten and robbed by some men; that a few seconds later appellant told him that Milner had fallen and hurt himself and that Milner identified the appellant as one of the men who robbed him, which the appellant denied. The appellant, when questioned at that time, also denied having any money, but a search of his person disclosed five dollars.

Appellant was interviewed later by city detectives, who testified as to the interview, stating that he had told them that he and another boy were sitting on the steps of a vacant house when Milner approached, questioned them about a girl's address, and waved a cap pistol stating that it was a real gun; that the other boy asked Milner to come into the alley for a drink; that appellant followed about ten minutes later and found Milner lying on the ground, his face covered with blood and his radio gone; that he told Milner he was taking him to a hospital and helped him to the street where he met a police officer and told him that Milner had fallen and hurt himself. The detective testified further that appellant had told him that Milner was intoxicated and that he had taken him home in an intoxicated condition some three months prior to the incident. The detective also described the appellant as wearing light shoes, "a dirty tan or something on that order."

Appellant testified in his own defense that he and a friend were drinking with Milner and took him home drunk three months prior to the incident. He further testified that he did not participate in the robbery or beating of Milner and the only connection he had with Milner was finding him in the alley and attempting to help him to the hospital.

The jury brought in a verdict of guilty on all counts, and a motion for a new trial was filed. Prior to the argument of this motion, defense counsel was notified by a social worker at Moyamensing Prison that Milner, who in the meantime had been arrested for burglary, had contacted the social worker and recanted his original testimony, stating that he had been mistaken in his identification, and had signed an affidavit to this effect. However, in open court, Milner retracted his recanted statements, explaining that he had recanted because of threats against him, and he again positively identified the appellant as the man who had beaten and robbed him. The motion for a new trial was dismissed and this appeal followed.

Appellant contends that the attitude and certain remarks of the trial judge were prejudicial to the defendant. On direct examination the appellant testified that he supplied Milner with a drink of beer. The following colloquy ensued:

"The Court: Did you warn this defendant that he is getting himself into a mess, buying drinks for a minor?

"Mr. Arronson: Your Honor, this is proof of the fact of knowledge of the defendant with the prosecutor. It is more important, your Honor, to prove that this defendant knew the prosecutor; it is very important in his case.

"The Court: The very fact he says he knows him is enough, but you are convicting this man of another crime."

It is claimed the above statement clearly indicated to the jury that the court had already concluded that the appellant was guilty. The words, "another crime", taken in their worst light are not conclusive of any predetermination of the defendant's guilt. In ordinary usage, the phrase "another crime" can mean a different crime rather than an additional crime.

Webster's Unabridged International Dictionary (2nd Ed. 1954) gives both definitions. The court was acting properly in giving its admonition to the appellant and his counsel of the possible self incriminating features of the testimony, and its inadvertent use of the word "another" obviously did not convey to the jury that the court was convinced of the appellant's guilt. The remark cannot be considered prejudicial error particularly since no exception was taken at the time.

The second remark which the appellant contends was prejudicial was made after the assistant district attorney objected to defense counsel asking the appellant whether the testimony the appellant gave on the stand was exactly the same as the answers he gave in the interrogation by the police following his arrest. The court said, "It doesn't hurt you, Mr. Della Porta (assistant district attorney), because the detective testified to the contrary and has it right in the report made at the time of the event, so it is not hurting you a bit." The appellant has failed to show in what manner this remark was prejudicial. The lower court was merely advising the prosecution that the statement was already in the record. There was no mention of credibility or truthfulness and no basis for an inference to be drawn by the jury as to the credibility of the witness.

The appellant contends that the trial judge's overruling of the defendant's objection to a question directed by the Commonwealth to the appellant and accusing him of having lied, left the jury with the impression that the trial judge shared in the district attorney's opinion that the defendant had actually lied. There is no merit to this contention since the trial judge simply permitted cross-examination of the appellant on what he had previously said. This certainly was not prejudicial since the witness's credibility on this point was already before the jury.

Appellant contends that defense witness Dykes was accused by the assistant district attorney of having participated with the defendant in the robbery committed upon Milner and that the trial judge erred in overruling his objection to this accusation. Dykes had testified to familiarity with the circumstances surrounding the commission of the crime but, on cross-examination, was vague as to how this information was acquired. The record shows that he was asked, not accused, whether he had participated with appellant in the robbery. The trial judge properly ruled that the witness on cross-examination may be questioned with greater latitude. Upon cross-examination of an adverse witness, every circumstance relating to what he has testified or which is within his knowledge may be developed, including any matter germane to direct examination, qualifying or destroying it, or tending to develop facts which have been improperly suppressed or ignored by the adverse party. *Murphy v. Wolverine Express, Inc.,* 155 Pa. Superior Ct. 125, 38 A. 2d 511. Considerable latitude must be left to the trial judge in determining the scope of cross-examination, and a trial judge's action thereon will not be reversed in the absence of an abuse of discretion. *Stawczyk v. Ehrenreich,* 191 Pa. Superior Ct. 195, 156 A. 2d 371.

During the redirect examination of Milner, he was asked whether he had admitted to the witness Dykes at a club that the appellant was not involved with the robbery. Counsel for the appellant called the question unfair on the grounds that there was no testimony that Milner and Dykes were together in a club. A discussion between the trial judge and defense counsel resulted in which the judge said, "It is not unfair. You don't know what is fair and unfair."

The appellant contends that this remark was prejudicial as it conferred the impression upon the jury that defense counsel was not able to distinguish between

"fair" and "unfair", and that the jury should therefore disregard the legitimate efforts made by defense counsel. The record shows that this was the fifth time that defense counsel had called questions unfair, and this continuous characterization of the trial as being unfair undoubtedly prompted the trial judge to make the remark. However, a remark or statement by the court in a criminal prosecution must be considered in connection with its context in determining whether it constituted prejudicial and reversible error. *Commonwealth v. Cannon*, 386 Pa. 62, 123 A. 2d 675. It must be determined from all the circumstances whether a remark has a prejudicial effect. There is no fixed rule applicable to every case. An accepted guide in determining prejudicial effect is that, if the remark may be said with fair assurance to have had but a slight effect upon the jury, if any at all, it will not vitiate an otherwise fair trial. *Commonwealth v. Savor*, 180 Pa. Superior Ct. 469, 119 A. 2d 849. To warrant a reversal because of remarks of the trial judge, it must appear that it is strongly probable that prejudice resulted. *Commonwealth v. Phillips*, 183 Pa. Superior Ct. 377, 132 A. 2d 733; *Commonwealth v. Heffelfinger*, 82 Pa. Superior Ct. 351.

The trial judge here was unquestionably fair in his charge to the jury in which he expressly directs the jury to disregard any opinions or statements of the court with regard to the facts or a witness in controversy. The isolated remarks of the trial judge referred to by the appellant do not reveal any antagonism or hostility, and at their worst are so minimal as to have no effect on the outcome of the jury's deliberations.

The appellant further contends that the recanted testimony of witness Milner which was later retracted in open court required the grant of a new trial. In order to justify the granting of a new trial on the basis of after-discovered evidence, the evidence must have

been discovered after the trial and must be such that it could not have been obtained at the trial by reasonable diligence, must not be cumulative or merely impeach credibility, and must be such as would likely compel a different result. *Commonwealth v. Schuck,* 401 Pa. 222, 164 A. 2d 13; *Commonwealth v. Whalen,* 189 Pa. Superior Ct. 359, 150 A. 2d 137.

Recantation of testimony is exceedingly unreliable, and it is the duty of the court to deny a new trial where it is not satisfied that such testimony is true. *Commonwealth v. Szocki,* 183 Pa. Superior Ct. 79, 127 A. 2d 760. Here, because of the retraction of the recanted testimony in open court and the witness's explanation that his original testimony was true while the recantation was forced from him by threats of physical harm, there was no contradictory testimony before the court to constitute after-discovered evidence and serve as a basis for a new trial. The appellate court will not interfere with an order refusing a new trial, applied for on the ground of recanted testimony, unless there has been a plain abuse of discretion. *Commonwealth v. Palarino,* 168 Pa. Superior Ct. 152, 77 A. 2d 665. There is no such abuse of discretion in the present case.

The appellant further contends that the evidence was insufficient to sustain a conviction. The credibility of the witness is exclusively within the province of the jury. It is apparent from the verdict that the jury believed Milner's testimony and not that of the appellant, who had made false or contradictory statements at the time of the arrest with an intent to divert suspicion or mislead the police. The test of the sufficiency of the evidence, irrespective of whether it is direct or circumstantial, is whether accepting as true all the evidence upon which, if believed, the jury could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime charged. *Commonwealth v. Hart,*

403 Pa. 652, 170 A. 2d 850. Milner's testimony and that of the police officers point beyond reasonable doubt to the guilt of the appellant and is sufficient evidence to sustain a conviction.

Judgment affirmed.